Sovereign Camp, W. O. W., *v.* Hynde.

(Division A. March 3, 1924.)

[99 So. 259. No. 23965.]

Insurance. *Custom of local clerk to advance dues, unknown to sovereign camp, held not to estop society to assert suspension for nonpayment of dues.*

Where constitution and by-laws of beneficiary society, made part of society's contract with member, provided, under Hemingway's Code, section 5192, that no customs of any camp should have the effect of waiving any requirements of the society, a custom of the clerk of a local camp to advance dues of a member of which the sovereign camp had no notice did not estop the society from claiming that the member was suspended at the time of his death for nonpayment of dues.

Appeal from circuit court of Lauderdale county.

Hon. C. C. Miller, Judge.

Action by Mrs. Luly Hynde against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff,

134 Miss.—45.

and defendant appeals.    Reversed and judgment rendered.

*Neville & Stone,* for appellant.

Under the uncontradicted testimony in this record the local camp clerk had no authority to bind the defendant by any act or promise to waive the payment of monthly assessments against the certificates sued on.  He was the agent of defendant, but with limited powers, delegated to him by the constitution and laws of the sovereign camp. The general principles of law governing those who deal with agents apply here.  We invoke two doctrines that our court is committed to.  First, ''The authority of an agent to bind his principal depends upon the powers conferred upon him by his principal.''   Second, ''One deals with an agent at his own peril.''   *Gulf Coast Traction Company* v. *Faulk,* 80 So. 340; *Sumrall* v. *Litselman Bros.,* 58 So. 594.

Section 109 (G) of the constitution and laws of defendant limits Watt's powers to those delegated in said constitution and laws.  Here is a specific limitation of authority on the agent to bind his principal on this identical question, that of waiving a contractual obligation.  The insured is presumed to have known the limitation of the clerk's authority to bind the principal, and hence dealt with open eyes.  *Odd Fellows, etc.,* v. *Celea Smith,* 58 So. 100.

Section 5192, Hemingway's Code, authorizes fraternal benefit societies to provide in their laws that subordinate officers shall have no power to waive the provisions of its constitution and laws, and when so enacted it shall be binding.  There is no proof in this record that the sovereign camp had any knowledge whatever of the acts and promises of the local clerk, as testified to by plaintiff herein; and no proof that it acquiesced in or approved of any conduct that even contemplated a waiver of the pay-

ment of assessments. But there is positive proof to the contrary.

This record discloses no evidence of a waiver of the payment of assessments known to, or acquiesced in by the defendant, nor is there proof in the record of any custom established of waiving forfeitures for non-payment of assessments, but the contrary of both propositions is established by the evidence in this case. We earnestly contend that the failure to pay assessments as they become due and payable terminated all rights under the benefit certificate here sued on. *Valentine* v. *Hood Camp P. J. W. O. W.*, 8 A. L. R. 380; *Haylack* v. *Sov. Camp, W. O. W.*, 8 A. L. R. 478; *Sov. Camp, W. O. W.* v. *Gay*, 93 So. 559; *Sov. Camp, W. O. W.* v. *Adams*, 86 So. 737; *Sov. Camp, W. O. W.* v. *Ballard*, 97 So. 895; *Independent Order* v. *Moncref*, 50 So. 558 (Miss.); *Kennedy* v. *Grand Fraternity*, 92 Pac. 791; *Sov. Camp.* v. *Anderson*, 202 S. W. 698 (Ark.); *Sov. Camp* v. *Newsom*, 219 S. W. 759, (Ark.); *Grand Lodge* v. *Taylor*, 131 Pac. 783, (Colo.); *Supreme Council* v. *Grove*, 96 N. E. 159 (Ind.); *Howton* v. *Sovereign Camp*, 172 S. W. (Ky.) 687.

We respectfully submit that case should be reversed and judgment rendered'in favor of the defendant.

*M. W. Reily* and *J. E. Parker*, for appellee.

The appellant bases its defense upon the lack of authority in the clerk of the local camp to bind the appellant by contract or estoppel, and certain portions of the by-laws and constitution of the order are relied upon to establish this defense.

Our answer to this defense is three-fold. (1) That the clerk of the local camp did in fact have the authority to bind the appellant in the manner relied upon in this case; (2) That the apparent authority with which the local clerk was clothed by the appellant authorized him to bind the appellant within the scope of such apparent authority; (3) That the appellant is estopped to deny the binding force of the agreement made in this case.

In the collecting of dues, the camp clerk becomes the company by both appearance and effect. The only one authorized to act; the only one in position to act; the only visible representative of the insurer. If the letter of the rule has trimmed him to the point of ineffectiveness, they have provided no one else to be more effective.

The camp clerk is not represented as being wholly without power in regard to keeping policies or certificates alive, except by accepting the dues when offered before default. But under some circumstances it is contemplated that such certificate may be kept in proper form and fully effective by the acts of the camp clerk, without the member having to pay his dues. Rule 109.

See *Whiteside* v. *Supreme Conclave I. O. of H.,* 82 Federal 275, where the financial collector of the insurance company had frequently granted the insured an extension of time for the payment of his dues; *Johnson* v. *Grand Lodge, A. O. U. W.,* 86 Pac. 494, where it was held that the assurance by a subordinate lodge to a sick member that it would pay his dues for a specified time, and relied upon by such member, waived payment during that time, and prevented a forfeiture from being declared for non-payment, without notice to him. See, also, *McCorkle* v. *Texas Benev. Assn.,* 8 S. W. 516; *Jones* v. *Knights of Honor,* 127 A. S. R. 277; *Sovereign Camp, W. O. W.,* v. *Dismukes,* 38 So. 354. The language used by our court in the case of *Fraternal Aid Union* v. *Whitehead,* 87 So. 453, is accurate in defining the law, and applicable to the facts in this case.

As was there pointed out, there must be some one with authority to act. The facts in this case show that under the terms of the constitution no one has been so authorized. Section 2615, Code of 1906, supplies this deficiency, and it was this kind of a situation that the section was intended to remedy. The company has provided no one to meet its policy-holders to deal with them on the basis of liability or authority; the statute says there is one with authority whose acts will make operative all the du-

ties and liabilities imposed by law, and that person is the agent who receives, collects, or transmits the premiums paid for this insurance.

Here the company, through its representative, was trusted. The conditions causing this agreement to be made continued to grow worse, and as they grew worse, the value of the policy became more fixed and its maturity more certain, and every feature which warranted the making of this agreement in the first instance with greater reason denied the right to break it.

In the very soul and purpose of the doctrine of estoppel are the rights of the appellee founded. She trusted her rights into the hands of the appellant, and it cannot be the law that a broken trust can be recognized as the basis of a right. The judgment entered should not be disturbed.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a judgment against appellant for two thousand, one hundred and forty dollars in favor of Mrs. Luly Hynde, beneficiary in a certificate of insurance issued upon the life of her deceased husband by the appellant, Sovereign Camp, Woodmen of the World. The benefit certificate was of the usual form, which provided that, if the insured died while in good standing in the order, that is, had paid all dues and assessments required of him by the constitution and by-laws of the order then in existence or that might be enacted in the future, the beneficiary, the appellee here, would be entitled to receive the amount of the certificate. The application for the benefit insurance is made a part of the contract of insurance along with the constitution and by-laws of the order, and is binding upon both the insurer and insured. The by-laws of the order require that all assessments and dues must be paid on or before the last day of each month; otherwise the beneficiary shall stand suspended, and the benefit certificate becomes void upon such suspension.

The by-laws also provide that no officer or agent of the Sovereign Camp, or of any camp, shall have the right or authority to waive any of the conditions upon which the beneficiary certificate is issued, or to change, vary, or waive any of the provisions of the constitution or by-laws, nor shall any customs on the part of any camp or camps with or without the knowledge of any sovereign officer have the effect of changing, modifying, or waiving any of the laws or requirements of the order; that the clerk of a local camp shall not by acts, representation, waivers, or by vote of his local camp, have any power or authority with reference to waiving any of the provisions of the constitution and the laws of the order with regard to the payment or collection of the dues and assessments required to be paid monthly by the insured members.

The facts of the case in short are as follows: The insured, Mr. Joseph Hynde, husband of appellee, died in July, 1921. He was a member of the appellant order, which had issued a benefit certificate to him, and upon which he paid all assessments and dues for twenty years before his death, and up to the 1st day of January, 1921. He failed to pay the dues and assessments on his certificate for the month of January, 1921, and was in default for his assessments for all the months thereafter up to the time of his death. His failure to pay the January assessment before the last day of that month, as required, was reported by the local camp clerk to the Sovereign Camp, which resulted in the suspension of the insured and causing his certificate to become void under the contract of insurance. Consequently the appellant refused to pay the amount of the certificate when demand was made by the appellee after her husband died.

In the court below the appellee introduced testimony showing that the insured became disabled some time in 1920, and was confined to his room, and the appellee, his wife, had been paying the dues on her husband's certificate by giving checks to the camp clerk for several months' dues at a time, which the clerk had already paid;

that the local camp clerk had many times accommodated her by paying the dues, and she would then afterwards pay the amount back to him; that when she last saw the clerk in December, 1920, he promised her that he would see that the dues of her husband were paid regularly, and that she need not worry about it; that the clerk said the local camp had obligated itself to see that her husband's dues were paid while he was confined to his home on account of his injury; that the Sovereign Camp wrote a letter to the deceased, and inclosed some kind of a dividend check to him, about the middle of January, 1921, and stated in the letter that her husband was a member in good standing; that the Sovereign Visitor, a newspaper published by the Head Camp, was regularly sent to her husband up to the time of his death; that she depended upon the camp clerk to pay the assessments when they should become due each month, and thus prevent the suspension of her husband, in the same way that he had customarily paid them prior to January 1, 1921; that the clerk of the camp assured appellee that all subsequent dues on the policy would be taken care of by the local camp until further notified, and late in 1920 he told her the camp was taking care of her husband's dues, and that appellee depended upon these assurances of the clerk, and for that reason failed to pay the January, 1921, dues and the succeeding months before the death of her husband.

The camp clerk testified that, while he had paid the dues for some of the months in 1920, he had made no promisé to continue to pay the dues, but that he notified the insured that unless he paid the dues for January, 1921, and the following months he would be suspended; that upon the failure of the insured to pay the January, 1921, dues he reported the suspension to the Sovereign Camp.

The record also discloses, without contradiction, that the Sovereign Head Camp had no notice or knowledge of any character whatever that the clerk of the camp or the local camp itself had been paying the dues of the insured,

or that any promises or agreements between the insured and the clerk of the camp had been made. In other words, the proof is conclusive that the Sovereign Camp had no notice whatever of any custom or arrangement between the insured and the local officers as to the paying of assessments or the extension of time in which to pay them.

We think the statement of the case makes it obvious that but one conclusion can be reached by this court, and that is, no, recovery can be had in the case because the benefit certificate was void on account of the suspension of the member for failure to pay the January, 1921, assessment. It is plain the constitution and by-laws of the order are part of the insurance contract which the insured is charged with knowledge of and required to comply with in order to receive the benefit of the insurance certificate. There was no authority, under the contract, vested in the camp clerk, or the local camp, to waive or extend the time for the payment of the monthly assessments. His agency authorized him to do nothing more in that regard than to collect the monthly assessments before the end of the month, and a failure of the insured to pay the assessment as required vitiated the certificate of insurance.

It is contended by counsel for appellee that the clerk was clothed with real or apparent authority to waive or extend payments, or to agree to pay the assessments himself, or that the camp together with the clerk might waive or extend the payments by agreeing to do so. But we see no merit in the contention, for the reason that the contract of insurance, as expressly provided in the constitution and by-laws of the order, forbids the clerk or the local camp from waiving or extending payments, but requires that the assessments must be paid during the month or suspension will follow, and the beneficiary is charged with this knowledge.

It is urged by the appellee that the acts and conduct of the clerk and camp in having paid some of the assessments for the insured and agreeing to pay subsequent assessments had become a custom, and amounted to a

waiver of the stipulation in the insurance contract that the dues must be paid during the month. But we must disagree with counsel on this point, because this record shows conclusively that the Sovereign Camp or its officers had no notice or knowledge of any such acts or conduct or agreements on the part of the clerk of the local camp. See section 5192, Hemingway's Code. If it had been a custom for the clerk to accept the assessments, or pay them himself, when past due and send them to the Head Camp, and the Head Camp or any general officer, knew of this custom, and thus consented to and approved of it by its conduct, a waiver, or estoppel, against the Sovereign Camp under these circumstances could be successfully claimed in this case, in accord with the rule announced in *Fraternal Aid Union* v. *Whitehead,* 125 Miss. 153, 87 So. 453. But such is not the case before us. The Sovereign Camp had no notice of the acts, conduct, or agreement of the local officers, and whatever agreement was made by the clerk to take care of the dues for the insured, or whatever custom had been established, was an individual arrangement, without authority or knowledge of the Sovereign Camp; and, when the clerk, acting individually for the beneficiary, failed to pay the dues on time, the certificate of insurance became void. *Odd Fellows* v. *Smith,* 101 Miss; 332, 58 So. 100.

The fact has not escaped our attention that the deceased insured paid his dues and assessments and was in good standing in the appellant order for about twenty years and it is indeed unfortunate that his widow is to be deprived of the needed benefits of the policy on account of fatal neglect at the very time when it was most important to pay the assessments and keep the policy in force; but contracts must be construed and enforced by the courts as written.

The judgment of the lower court is reversed, and judgment entered here for appellant.

Reversed, and judgment here for appellant.

*Reversed.*