GRIFFIS, J., for the Court.
 

 ¶ 1. Emmitt Paige, Sr., individually and on behalf of the wrongful death beneficiaries of his wife, Cherryl Paige (“Cherryl”), filed a medical negligence and wrongful-death action against Dr. William Harris and Mississippi Baptist Medical Center (“MBMC”) as a result of Cherryl’s death following aortie-valve-replacement (“AVR”) surgery performed by Dr. Harris. The circuit court granted MBMC’s motion for summary judgment as to all claims against MBMC. Paige appeals claiming: (1) the circuit court abused its discretion in limiting Paige’s right to discovery of MBMC’s corporate bylaws, medical-staff bylaws, and organizational charts; (2) the circuit court erred in excluding the testimony of Paige’s expert witnesses; and (3) summary judgment was improperly granted. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On February 16, 2004, Cherryl was admitted into MBMC for AVR surgery performed by Dr. Harris. Following surgery, Cherryl was transported to the cardiovascular-surgery-recovery unit. At the time she arrived in recovery, her vital signs were stable. Minutes later, Cher-ryl’s vital signs became unstable, and Dr. Harris was called immediately. He, along with anesthesiologist Dr. Barry Aden, tried to determine the cause of Cherryl’s change in condition. Dr. Harris decided to take Cherryl back to the operating room for exploratory surgery. Cherryl ultimately died during this surgery.
 

 ¶ 3. Paige filed suit against Dr. Harris and MBMC on March 4, 2005. He alleged that MBMC owed Cherryl: a duty to provide competent physicians and surgical staff, a duty to have sufficient staff in the
 
 *639
 
 cardiovascular-surgery-recovery unit, and a duty to exercise reasonable care in hiring, retaining, supervising, and monitoring the work of Dr. Harris and his surgical staff.
 

 ¶ 4. During discovery, Paige requested a copy of MBMC’s corporate bylaws, medical-staff bylaws, and organizational chart. MBMC argued that these documents were not relevant, and MBMC refused to produce these documents. Paige filed a motion to compel. The circuit court reviewed the requested documents in camera and determined that certain portions of the documents were relevant. Those portions determined by the judge to be relevant were produced in discovery.
 

 ¶ 5. Paige identified Dr. Calvin Ramsey, an internal medicine primary care physician from Lexington, Mississippi, as an expert expected to testify that Cherryl died as a result of the gross negligence of Dr. Harris and the staff of MBMC. Dr. Harris and MBMC moved to exclude the testimony of Dr. Ramsey based on his lack of qualifications. The circuit court determined that Dr. Ramsey lacked the education, and the experience or training in the speciality of cardiovascular surgery; thus, the circuit court granted the motion to exclude Dr. Ramsey’s testimony.
 

 ¶ 6. Paige also designated as an expert Dr. Charles Bridges, a cardiovascular surgeon. However, Dr. Bridges’s report focused solely on Dr. Harris’s negligence. The report gave no opinion on the standard of care for MBMC or its staff. On October 15, 2007, MBMC moved for summary judgment. Paige did not request additional time under Mississippi Rule of Civil Procedure 56(f). Neither did Paige complain that he did not have an adequate opportunity for discovery.
 

 ¶ 7. On November 1, 2007, Paige submitted a supplemental report from Dr. Bridges. MBMC moved to exclude this opinion as untimely because this was the first time Paige had made any disclosure that Dr. Bridges might offer an opinion against MBMC. This filing occurred long after the final deadline for expert-witness supplementation and only thirty-two days before trial was set to begin.
 

 ¶ 8. The circuit court held that the supplemental report from Dr. Bridges contained new opinions that violated the circuit court’s scheduling order and Rule 4.04 of the Uniform Rules of Circuit and County Court and were unfairly prejudicial to MBMC. The motion to exclude was granted. Because Paige failed to submit expert testimony that MBMC violated the standard of care, there was no genuine issue of material fact presented. The circuit court granted MBMC’s motion for summary judgment thereby disposing of all claims against MBMC. Paige now appeals the circuit court’s ruling.
 

 STANDARD OF REVIEW
 

 ¶ 9. The standard of review of an order granting summary judgment is de novo.
 
 PPG Architectural Finishes, Inc. v. Lowery,
 
 909 So.2d 47, 49 (¶ 8) (Miss.2005) (citing
 
 Hurdle v. Holloway,
 
 848 So.2d 183, 185 (¶ 4) (Miss.2003)). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists. The moving party has the burden of demonstrating that no genuine issue of material fact exists within the ‘pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.’ ” M.R.C.P. 56(c).
 

 ¶ 10. The supreme court has set forth the standard of review in medical-negligence actions as follows:
 

 Absent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive
 
 *640
 
 summary judgment and establish the negligence of a physician. A trial judge’s determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion.
 

 Sheffield v. Goodwin,
 
 740 So.2d 854, 856 (¶ 6) (Miss.1999) (internal citations omitted).
 

 ANALYSIS
 

 1. Whether the circuit court abused its discretion in limiting Paige’s right to discovery of MBMC’s corporate bylaws, medical-staff bylaws, and organizational charts.
 

 ¶ 11. Paige argues that he should have been given full access to MBMC’s corporate bylaws, medical-staff bylaws, and organizational charts during the discovery phase of this matter. MBMC responds that the circuit court thoroughly reviewed the documents in camera, and those portions of the documents which were deemed relevant to the case were disclosed to Paige.
 

 ¶ 12. Paige requested the documents from MBMC; however, MBMC objected to disclosure on the basis that the documents were not relevant to the claims alleged in Paige’s complaint. Paige filed a motion to compel, and after a hearing on the matter, the circuit court ordered an in-camera review of the documents to determine whether there were “any provisions of those documents that are relevant to the hiring, supervision and review of doctors to whom staffing privileges are granted by the hospital and whether or not there are any provisions that relate to patient care.” After the circuit court’s in-camera review of the documents, the circuit court ordered that several sections of the documents be disclosed to Paige. MBMC timely complied with this order.
 

 ¶ 13. Paige claims that it was a gross discovery violation for MBMC to produce these documents almost two years after the discovery requests were propounded. However, Paige waited well over a year to file a motion to compel with the circuit court. It was his obligation to bring this alleged discovery violation to the circuit court’s attention, and his delay substantially contributed to the length of time between the request and the circuit court’s ruling.
 

 ¶ 14. Further, Paige claims that the delay prejudiced his case because he did not have sufficient time to obtain an expert in hospital administration between the time that he received the relevant portions of the documents and the circuit court’s grant of the summary judgment for MBMC. However, this claim is inconsistent with the proceedings before the circuit court. On September 24, 2007, the circuit court ordered that the relevant portions of the documents be disclosed to Paige. MBMC filed its motion for summary judgment on October 15, 2007. Paige failed to make any request for an extension of time for discovery before the circuit court’s November 29, 2007, ruling on the motion for summary judgment.
 

 ¶ 15. In fact, “[pjursuant to Rule 56(f) of the Mississippi Rules of Civil Procedure, the [circuit] court has discretion to postpone consideration of a motion for summary judgment and to order that discovery be completed.”
 
 Frye v. Southern, Farm Bureau Cas. Ins. Co.,
 
 915 So.2d 486, 491 (¶ 14) (Miss.Ct.App.2005). However, Paige failed to request further time pursuant to Rule 56(f).
 

 ¶ 16. Paige claims that, under the totality of the circumstances, the circuit court abused its discretion as to the discovery matters in this case. However, we find
 
 *641
 
 this argument unsubstantiated considering that Paige had all relevant medical records, had the ability to depose all MBMC personnel involved in the treatment of Cherryl, was given multiple extensions of time in order to designate medical experts, failed to file his motion to compel in a timely fashion, and failed to request additional time before the circuit court ruled on the motion for summary judgment. His argument that, after years of discovery in this case, he found himself unprepared to oppose MBMC’s motion for summary judgment is unconvincing.
 

 ¶ 17. “The control of discovery is a matter committed to the sound discretion of the trial judge.”
 
 Holland v. Mayfield,
 
 826 So.2d 664, 673 (¶ 37) (Miss.1999). We find no abuse of discretion in the circuit court’s discovery rulings. Accordingly, this issue is without merit.
 

 2. Whether the circuit court
 
 erred
 
 in excluding the testimony of Paige’s expert ■witnesses.
 

 ¶ 18. The circuit court held that Paige failed to present expert testimony showing that MBMC violated the standard of care; thus, MBMC’s motion for summary judgment was granted. Paige contends that summary judgment was improper because the testimonies of his expert witnesses— Dr. Ramsey and Dr. Bridges—were erroneously excluded by the circuit court.
 

 A. Dr. Ramsey
 

 ¶ 19. Dr. Ramsey is a board-certified internist practicing general medicine in Lexington, Mississippi. Paige stated in his expert disclosure that “Dr. Ramsey is expected to testify that Cherryl Paige died because of gross negligence and recklessness on the part of Dr. William Harris and others, including the medical staff at the Baptist hospital, the nurses, the surgical technicians and the [anesthesiologist.” Dr. Harris, who performed Cherryl’s surgery, is a thoracic surgeon.
 

 ¶ 20. MBMC joined Dr. Harris’s motion to exclude the testimony of Dr. Ramsey based on Dr. Ramsey’s lack of qualifications as a surgeon. Dr. Ramsey has no training in surgery of any type, including thoracic surgery. There was no evidence presented that Dr. Ramsey has ever observed or supervised the members of a surgical team such as the team who assisted Dr. Harris. Based on Dr. Ramsey’s lack of qualifications as a thoracic surgeon, the circuit court granted MBMC’s motion to exclude Dr. Ramsey’s testimony.
 

 ¶ 21. Paige argues that Dr. Ramsey was a qualified expert under the requirements of Rule 702 of the Mississippi Rules of Evidence, which states that:
 

 If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 MBMC responds that the circuit court, in its role as gatekeeper, had wide discretion to exclude Dr. Ramsey’s testimony.
 
 See Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 34 (Miss.2003) (citing
 
 Puckett v. State,
 
 737 So.2d 322, 342 (Miss.1999) stating “the admission of expert testimony is within the sound discretion of the trial judge.”)
 

 ¶ 22. To be accepted under Rule 702 as an expert in an medical malpractice case, it is not necessary that the proposed
 
 *642
 
 expert be of the same specialty as the physician who is the subject of the testimony.
 
 Hubbard v. Wansley,
 
 954 So.2d 951, 957 (¶ 13) (Miss.2007). However, it is required that the expert show “[satisfactory familiarity with the specialty of the defendant doctor.”
 
 Id.
 

 ¶ 23. The supreme court recently decided this very issue in
 
 McDonald v. Memorial Hospital at Gulfport,
 
 8 So.3d 175 (Miss.2009). There, McDonald designated a board-certified pathologist and psychiatrist to testify about the standard of care for a gastroenterologist. The supreme court noted that:
 

 [the expert] has never practiced in the field of gastroenterology, and since medical school has not performed any procedures in this field other than one colonoscopy in 1976. Further, [he] has never admitted a patient to an acute-care facility other than a psychiatric facility, and he has not performed an EGD, the procedure Mr. McDonald was undergoing, since medical school in the 1960s.
 

 Id.
 
 at 181 (¶ 16). Thus, the expert was not familiar with the standard of care to which a gastroenterologist is held.
 
 Id.
 

 ¶ 24. Here, as in
 
 McDonald,
 
 Dr. Ramsey is not familiar with the standard of care to which a thoracic surgeon performing AYR surgery is held. Dr. Ramsey is not a surgeon, nor has he performed or participated in the type of thoracic surgery like that Dr. Harris performed on Cherryl. Paige claims to have offered Dr. Ramsey not as a surgical expert but as an expert testifying as to the standard of care of the members of the surgical team. However, there is no basis in the record to show that Dr. Ramsey is familiar with the requirements of a surgical team because he is an expert in internal medicine, not surgery.
 

 ¶ 25. We find that the circuit court was correct in excluding Dr. Ramsey’s testimony because Dr. Ramsey lacks the required familiarity with Dr. Harris’s specialty in thoracic surgery.
 

 B. Dr. Bridges
 

 ¶ 26. Dr. Bridges is a board-certified cardiovascular surgeon who was timely designated as one of Paige’s expert witnesses. However, his proposed testimony was relevant only to the claims against Dr. Harris, and there was no mention of the standard of care or any resultant breach by MBMC or its personnel. The deadline for expert-witness disclosures was extended numerous times by the circuit court during the two years of discovery in this matter. However, there was no indication that Dr. Bridges would offer testimony that MBMC breached its standard of care.
 

 ¶ 27. This case was set for trial on December 3, 2007, and the deadline to make final supplemental expert disclosures was extended to September 7, 2007. On October 15, 2007, MBMC moved for summary judgment. On November 1, 2007, just over one month before trial, Paige submitted a supplemental report from Dr. Bridges that, for the first time, included opinion testimony regarding MBMC’s standard of care.
 

 ¶ 28. MBMC moved to exclude this testimony as a violation of both the circuit court’s deadline of September 7, 2007, and Rule 4.04A of the Uniform Rules of Circuit and County Court which requires that all expert disclosures must be made at least sixty days before trial absent special circumstances. Paige neither presented any special circumstances, nor did he request additional time.
 

 ¶ 29. We find that circuit court was correct in holding that this disclosure was untimely and caused prejudice to MBMC which would not have had adequate time before trial to review the evidence.
 

 
 *643
 
 ¶ 30. As the supreme court held in McDonald: “as a general rule, expert testimony must be used in proving the elements of medical negligence. Absent expert testimony, there is no triable issue of fact with regard to the alleged medical negligence.”
 
 McDonald,
 
 8 So.3d at 182 (¶ 19). Because Paige failed to timely provide expert testimony regarding the standard of care of MBMC, there is no issue of fact as to the alleged medical negligence of MBMC. Accordingly, this issue is without merit, and the circuit court’s order granting MBMC’s motion for summary judgment is affirmed.
 

 ¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES AND MAXWELL, JJ., NOT PARTICIPATING.